## UNITED STATES v. BAKER et al.
### No. 4504.

District Court, S. D. Texas, Laredo Division.
Dec. 29, 1936.

Douglas W. McGregor, U. S. Dist. Atty., and Forrest Lee Andrews and 'George O'Brien John, Asst. U. S. Dist. Attys., all of Houston, Tex.

Bush & Bush, of Davenport, Iowa, Harry L. Fisher, of Muscatine, Iowa, and Mann & Mann, of Laredo, Tex., for defendant Norman Baker.

KENNERLY, District Judge.

This is a hearing on the demurrer of the defendant Norman Baker to an indictment filed herein April 20, 1936, which charges the defendants (count 1) with conspiracy (section 88, title 18, U.S.C.A.) to violate, and (counts 2, 3, 4, and 5) with violations of, subdivision (b) of section 325, title 47 U.S.C.A. Subdivisions (b) and (c) of such section read as follows:

"(b) No person shall be permitted to locate, use, or maintain a radio broadcast studio or other place or apparatus from which or *whereby* sound waves are converted into electrical energy, *or mechanical or physical reproduction of sound waves produced,* and caused to be transmitted or delivered to a radio station in a foreign country for the purpose of being broadcast from any radio station there having a power output of sufficient intensity and/or being so located geographically that its emissions may be received consistently in the United States, without first obtaining a permit from the Commission upon proper application therefor.

"(c) Such application shall contain such information as the Commission may by regulation prescribe, and the granting or refusal thereof shall be subject to the requirements of section 309 hereof with respect to applications for station licenses or renewal or modification thereof, and the license or permission so granted shall be revocable for false statements in the application so required or when the Commission, after hearings, shall find its continuation no longer in the public interest."

All the counts in the indictment are bottomed on the italicized portion of the quoted section; i. e., it is charged in the conspiracy count (count 1) that: "the said defendants did unlawfully, wilfully, knowingly and feloniously conspire, combine, confederate and agree together and with each other to locate, maintain and use apparatus from which and whereby sound waves are and were converted into mechanical and physical reproductions of sound waves and to carry, transport and deliver and cause to be transmitted and delivered to a radio broadcast station in a

foreign country, to wit, Station XENT at Nuevo Laredo in the Republic of Mexico for the purpose of being broadcast from that station, which said Station XENT then and there had a power output of sufficient intensity and was so located geographically that its emissions could be and were received consistently in the United States, without first obtaining a permit from the Federal Communications Commission therefor, in violation of the Communications Act of 1934 approved June 19, 1934."

In setting forth the overt acts in count 1 and in the substantive counts (counts 2, 3, 4, and 5) substantially the same language is used.

The government was required to, and did, file bill of particulars, August 31, 1936, as follows:

"I. The apparatus maintained and used by defendants from which sound waves were converted into mechanical and physical reproductions of sound waves, as contemplated in the indictment, consisted of a recording instrument or device, composed of a microphone and amplifier and a motor-driven cutting head, upon which a blank phonograph record was placed and a cutting needle used to record on the blank record the voice or other sound waves directed into the microphone. Said device was employed in making what is commonly termed electrical transcriptions.

"II. Said mechanical and physical reproductions of sound waves were carried, transported and delivered to Radio Station XENT at Nuevo Laredo, Mexico, by defendants or some of them, and/or by their employees or agents."

June 19, 1934, Congress passed the "Communications Act of 1934" (48 Stat. 1064, 1105, sections 151 to 609, 47 U.S.C.A.) for the declared purpose of (section 151, 47 U.S.C.A.): "regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nationwide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense," etc.

The Federal Communications Commission is created by the act to execute and enforce its provisions. The provisions of the act (with certain exceptions not necessary to mention) are made applicable (sub-divisions (a) and (b) of section 152) "to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and to all persons engaged within the United States in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided;"

Wire and radio communications, etc., are defined thus (section 153):

"(a) 'Wire communication' or 'communication by wire' means the transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission.

"(b) 'Radio communication' or 'communication by radio' means the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission."

Interstate and Foreign Communications, etc., are also defined (subdivisions (e) and (f) of section 153):

"(e) 'Interstate communication' or 'interstate transmission' means communication or transmission (1) from any State, Territory, or possession of the United States (other than the Philippine Islands and the Canal Zone), or the District of Columbia, to any other State, Territory, or possession of the United States (other than the Philippine Islands and the Canal Zone), or the District of Columbia, (2) from or to the United States to or from the Philippine Islands or the Canal Zone, insofar as such communication or transmission takes place within the United States, or (3) between points within the United States but through a foreign country; but shall not include wire communication between points within the same State, Territory, or possession of the United States, or the District of Columbia, through any place outside thereof, if such communication is regulated by a State commission.

"(f) 'Foreign communication' or 'foreign transmission' means communication or transmission from or to any place in the United States to or from a foreign counfry, or between a station in the United States and a mobile station located outside the United States."

The Communication Commission is, by the earlier sections of the act, given broad powers to license, regulate, etc., interstate and foreign commerce in communications by wire and radio, but subdivision (b) of section 325 (47 U.S.C.A.), first above quoted and on which this indictment is bottomed, broadens the scope of the earlier sections by, among other things, including within the regulating power of the Communication Commission a place or apparatus "whereby * * * mechanical or physical reproduction of sound waves" are produced and caused to be transmitted or delivered to a radio station in a foreign country and broadcast back into the United States, etc. In other words, the act is broadened by subdivision (b), so that, in order to be within the act, communication need not be all by wire and/or radio, but may be (as alleged in the Indictment) in part by phonograph record or electrical transcription transmitted or delivered, and in part by wire or radio.

1. The power of Congress to regulate interstate and foreign commerce, including communications by wire and radio, need not be discussed. And it does not matter whether such communications be wholly by wire or wholly by radio, or in part by both, or in part by some other means or method, so long as it is in fact in interstate or foreign commerce.

But defendant says that part of such a communication may not be by means of the production or making and the transmission or delivery of a phonograph record or an electrical transcription. He claims that the production of such a record or transcription for transmission or delivery, and its transmission or delivery, for such purpose, is not a part of nor a step in either interstate or foreign commerce, but an attempted regulation or prohibition of intrastate commerce. He claims that subdivision (b) of section 325 (47 U.S.C.A.) prohibits the manufacture and sale of phonograph records or electrical transcriptions in intrastate commerce, and that there is presented a case ruled by Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.

Ed. 1160, and cases there cited and discussed.

I do not think so. The production of the record or transcription (described in section 325 as a "mechanical or physical reproduction of sound waves") is but the first step of a sender whose voice and words are recorded thereon, in sending a message in interstate and/or foreign commerce. The second step is the transmittal or delivery of such record or transcription to a radio station in a foreign country. This may be done by delivering the record or transcription itself to such broadcasting station or by "playing" the record or transcription and transmitting to such station, by telephone or radio, the voice, words, or message recorded thereon. The third and final step is the radio broadcasting of the voice, words, or message back into the United States.

If the voice, words, or message were transmitted directly by radio or directly by telephone from this country to such radio station in a foreign country, and there broadcast back into this country, little or no difficulty would be found in pronouncing it a message sent in interstate and/or foreign commerce, and within the power of Congress to regulate. Because a phonograph record or an electrical transcription is adopted as one of the steps in sending the message does not, in my opinion, change its character.

2. Defendant singles out in subdivision (b) of section 325 the words "mechanical or physical reproduction of sound waves produced" and claims they are meaningless, or, at any rate, that they are not sufficiently clear to support a criminal statute. Specifically he says that they do not mean the production or manufacture of a phonograph record or an electrical transcription as charged in the indictment. But the whole of the subdivision must be read and considered together, and, when so read and considered, I think they clearly cover the producing of such a record or transcription and its delivery or transmission in the manner discussed to a broadcasting station, etc.

3. Defendant also says that subdivision (b) prohibits no acts and fixes no penalties. The prohibition is against the doing of the things therein set forth without first obtaining a permit from the Communication Commission, and the penalty is to be found in section 501 (47 U.S.C.A.)

4. The other questions raised by defendant are not meritorious and need not be discussed.

Believing subdivision (b) of section 325 (47 U.S.C.A.) to be valid and the indictment to be sufficient, the demurrer will be overruled.